**FILED**
**U.S. District Court**
**District of Kansas**
05/26/2026
**Clerk, U.S. District Court**
By: SND Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ZACKERY J. ASKINS,

      **Plaintiffs,**

      v.                          CASE NO.  26-3048-JWL

LAURA A. PROFFIT, et al.,

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Zackery J. Askins is a military prisoner currently incarcerated at the Midwest Joint Regional Corrections Facility ("MJRCF") at Fort Leavenworth, Kansas.  He proceeds pro se and has been granted leave to proceed in forma pauperis.  This matter is before the Court for screening Plaintiff's Second Amended Complaint (Doc. 11) ("SAC").  The Court's screening standards are set forth in the Court's Memorandum and Order at Doc. 10.

## I.  The SAC

Plaintiff brings this pro se civil rights action under 28 U.S.C. § 1331.  As Count I, Plaintiff alleges a violation of his First Amendment right to freely practice his religion and a violation of the Religious Freedom Restoration Act.[1]  (Doc. 11, at 3.)  For these violations, Plaintiff is seeking the "[r]eturn of all seized religious items and articles, or recompence for those items to the sum of $2,000; damages for the loss, time spent attempting to recover, and consequential injuries therein to the sum of $2,000; and the relief and reassignment of the MWJCRF Commander LTC Proffit,

---

[1]  Plaintiff asserts a claim under the Religious Freedom Restoration Act ("RFRA") (42 U.S.C. § 2000bb *et seq.*). RFRA provides that a government may not substantially burden a person's exercise of religion unless it demonstrates that doing so "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1.

and the dismissal or firing of Deputy Commander Stephen Hansen; sanction(s) or order(s) against the facility for these violations." (Doc. 11–1, at 9.)

As Count II, Plaintiff alleges an Eighth Amendment violation based upon the alleged denial of medical care and basic amenities, and indefinite isolation in the SHU. (Doc. 11, at 3.) For the Eighth Amendment violations, Plaintiff seeks $5,000 in damages, "the relief and reassignment of the MWJCRF Commander LTC Proffit, and the dismissal or firing of Deputy Commander Stephen Hansen; [and] sanction(s) or order(s) against the facility for these violations. (Doc. 11–1, at 10.)

As Count III, Plaintiff alleges a violation of the Fifth, Sixth, and Fourteenth Amendments based on the destruction of administrative remedies, parole packets, EO Complaints, and the denial of access to counsel and appeals. (Doc. 11, at 3–4.) Plaintiff also alleges that this violated 5 U.S.C. § 552 and 10 U.S.C. § 952. *Id*. at 4. For these violations, Plaintiff seeks "damages for the loss of administrative remedies, parole packets, direct interference and intentional disruption with appeals, and refusal to comply with Court mandated paperwork; damages to the sum of $15,000; the relief and reassignment of the MWJCRF Commander LTC Proffit, and the dismissal or firing of Deputy Commander Stephen Hansen; sanction(s) or orders(s) against the facility for these violations." (Doc. 11–1, at 9–10.)

Plaintiff names as defendants: Laura A. Proffit, Commander; and Stephen Joseph Hansen, Deputy Commander. For relief, Plaintiff seeks "return or replacement items; financial recompence, as outlined; removal, reassignment, or relief of parties." (Doc. 11, at 5.)

## II. Requests for Relief

Plaintiff seeks the return or replacement of his property, "financial recompence," and removal or reassignment. *Id*. Plaintiff also sets forth the specific relief he is seeking for each count in his SAC.

### A.  Monetary Damages

Plaintiff seeks monetary damages for all three counts in his SAC.  Plaintiff is not entitled to monetary damages.  In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court determined that the Federal Torts Claims Act did not operate as a waiver of sovereign immunity in an action brought by active-duty military personnel.  The Court held that the federal government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."  *Id.* at 146; *see also Roberts v. Callahan*, 30 F. App'x 772, 773 (10th Cir. 2002) (unpublished) ("The *Feres* doctrine bars a military prisoner's entitlement to monetary damages.") (citing *Walden v. Bartlett*, 840 F.2d 771, 774 (10th Cir. 1988)).

Federal courts have extended the "incident to service" test to bar other damages actions against military personnel.  In *Chappell v. Wallace*, 462 U.S. 296 (1983), the Court applied the *Feres* doctrine to bar constitutional claims brought pursuant to *Bivens*, holding "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations."  *Chappell*, 462 U.S. at 305; *see also United States v. Stanley*, 483 U.S. 669, 681 (1987) ("Today, no more than when we wrote *Chappell*, do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an 'incident to service' rule.").

Plaintiff's apparent status as a military prisoner dictates that his claims concerning his injuries while housed at the MJRCF arise incident to military service.  In *Ricks v. Nickels*, 295 F.3d 1124 (10th Cir. 2002), the Tenth Circuit noted that:

> At the time he filed the original complaint, Ricks was serving his sentence at the USDB in Fort Leavenworth, Kansas.  The USDB is the Army Corrections System maximum custody facility and provides long-term incarceration for enlisted and officer personnel of the armed forces.  No civilians are confined at the USDB.  The

3

> USDB is run by the Commandant, a United States Army military police officer. Military police serve as correctional officers at the USDB, which does not employ civilian guards. At the time of the complaint, all named Defendants were active duty members of the United States Army, serving in their official capacities as Commandant, noncommissioned officers, guards, and administrative support for the USDB.

*Id.* at 1126 (rejecting military prisoner's *Bivens* claim under *Feres* doctrine; plaintiff, although discharged, remained subject to the Uniform Code of Military Justice). The Court held that Ricks' alleged injuries stemmed from his "military relationship such that it is 'incident' to his military service, where he was convicted in a military court for offenses committed during active duty; was confined in a military institution commanded and operated by military personnel, subject to the USDB's rules and regulation; and was subject to the UCMJ and could be tried by court-martial for offenses during incarceration. Likewise, Plaintiff's claim for monetary damages is "incident to military service" and therefore barred by the *Feres* doctrine. Plaintiff is housed at the MJRCF, which is a military correctional facility.[2] Plaintiff acknowledges that he is a military inmate. (Doc. 11–1, at 1.) Plaintiff should show good cause why any request for monetary damages should not be denied based upon the *Feres* doctrine.

### B. Removal or Reassignment

Plaintiff seeks to have Commander Laura A. Proffit "reassigned," and to have Deputy Commander Stephen Joseph Hansen dismissed or fired. To the extent Plaintiff seeks to have Defendants reassigned or terminated, the Court is without authority to grant such relief. *See Nicholas v. Hunter*, 228 F. App'x 139, 141 (3rd Cir. 2007) ( "The remaining relief requested is not available as the District Court lacks authority to order a federal investigation and prosecution of the defendants or the termination of their employment."); *Goulette v. Warren*, No. 3:06CV235-1-

---

[2] The MJRCF provides "pre-trial confinement and post-trial incarceration for U.S. military prisoners sentenced to up to ten years of confinement." *See* https://home.army.mil/leavenworth/units-tenants/army-corrections-command (last visited May 21, 2026).

MU, 2006 WL 1582386, at n.1 (W.D. N.C. June 1, 2006) ("The Court notes that even if Plaintiff's claims prevailed in this case, this Court would not, based upon this law suit, have the authority to order the termination of the Defendant's employment or to grant Plaintiff an immediate, early release from jail."); *Martin v. LeBlanc*, No. 14-2743, 2014 WL 6674289, at n.1 (W.D. La. Nov. 24, 2014) (finding that where plaintiff requested an investigation, the termination of the defendants' employment and the closure of the prison, "[s]uch relief is not available in this action"); *Merrida v. California Dep't of Corr.*, No. 1:06-CV-00502 OWW LJO P, 2006 WL 2926740, at n.1 (E.D. Cal. Oct. 11, 2006) (finding that where plaintiff prays for the termination of defendant's employment, "the court cannot award this form of relief to plaintiff) (citing 18 U.S.C. § 3626(a)(1)(A)).  Plaintiff should show good cause why any request for Defendants' reassignment or termination should not be denied.

### C.  Injunctive Relief

Plaintiff also seeks injunctive relief with regard to Count I.  Plaintiff seeks to have his seized religious items and articles returned.  *See Walden*, 840 F.2d at 775 (allowing claims for injunctive and declaratory relief against military officials); *Rios v. Commandant*, 100 F. App'x 706, n.1 (10th Cir. 2004) (unpublished) (noting that the court has held that "[a military prisoner's] claims for injunctive and declaratory relief [were] not barred by the *Feres* doctrine.") (quoting *Walden*, 840 F.2d at 774).

The Tenth Circuit has held that the Court's "traditional powers of equity . . . to prevent violations of constitutional rights . . . flow from the long-recognized 'jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.'"  *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021) (quoting *Simmat v. U.S. Bur. of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007),

and *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  "*Bell v. Hood* held that suits for relief directly under the Constitution fall within [the] grant of jurisdiction" provided by § 1331.  *Id*. (citing *Simmat*, 413 F.3d at 1232).  "Section 1331 thus provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law."  *Id*. (quoting *Simmat*, 413 F.3d at 1232).

The Court's jurisdiction is not barred by sovereign immunity.  *Id*.  "Section 702 of the APA waives sovereign immunity for actions 'stating a claim that an agency . . . acted or failed to act . . . under color of legal authority.'"  *Id*. "This waiver is not limited to suits under the Administrative Procedure Act."  *Id*. at 1106–07 (citing *Simmat*, 413 F.3d at 1233); *see also Rivera v. IRS*, 708 F. App'x 508, 511 n.2 (10th Cir. 2017) (unpublished) ("The waiver of sovereign immunity provided in APA § 702 encompasses both claims of nonmonetary relief asserted under the APA and claims asserted against federal agencies under other, non-APA authority.") (citations omitted).

Even in cases where a court has jurisdiction over claims for nonmonetary relief, the Prison Litigation Reform Act ("PLRA")  requires exhaustion of administrative remedies prior to bringing an action regarding prison conditions.[3]  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (finding that "exhaustion of available remedies is required for any suit challenging prison conditions, not just for suits under § 1983") (citation omitted); *see also Gonzalez v. Ortiz*, 2021 WL 308548, at *2 (D. N.J. 2021) (noting that petitioner could bring a civil rights complaint for injunctive relief under § 1331, "but he must first exhaust administrative remedies under the . . . PLRA"). The PLRA's exhaustion requirement applies to military prisoners.  *See Long v. Johnston*, 2022 WL 17177348, at *2 (D. Kan. 2022) (finding that the PLRA's exhaustion requirement applies to military prisoners

---

[3]   In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

and that Article 138 of the Uniform Code of Military Justice provides a procedure for military prisoners to assert grievances) (citations omitted); *see also United States v. Guinn*, 81 M.J. 195, 203 (U.C.A.A.F. 2021) (defining exhaustion of administrative remedies as requiring the use of *both* the applicable prison grievance system and an Article 138 complaint).

The PLRA contains new standards for awarding prospective relief, *see* 18 U.S.C. § 3626(a), and provides a mechanism for defendants to seek termination of prospective relief, *see* 18 U.S.C. § 3626(b). Federal law provides for appropriate remedies with respect to prison conditions as follows:

> **(a) Requirements for relief.--**
> **(1) Prospective relief.--(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a).

However, any request for injunctive relief must specify the relief requested. Plaintiff states that he is seeking the return or replacement of his property. In the attachment to his SAC, he mentions that his religious texts and a religious pendant (Valknut) were seized. (Doc. 11–1, at 1.) Plaintiff claims that other property was seized such as legal documents, or religious items, "or in some cases items required per the MWJCRF packing list, that were brought to MWJCRF." *Id*.

Plaintiff has also filed a motion seeking injunctive relief. *See* Doc. 4. Although the Court is denying the motion without prejudice as set forth below, the MJRCF officials may include a response to the motion in the *Martinez* Report. Plaintiff has not shown that prospective injunctive

relief would remedy some of his complaints.  He argues that his medical records were not sent to MCFP Springfield while he was in custody there.[4]  (Doc. 11–1, at 3.)  He also claims that he was not allowed to use the restroom while he was in the hospital for treatment in August of 2025.  *Id*. at 5.  Plaintiff also claims that he was not allowed to submit paperwork for his parole board proceedings when he was in the hospital at Research Medical Center.[5]  *Id*. at 7.  Plaintiff claims that at his second board he was notified that the paperwork he handed to the parole office at MJRCF was not received by the board.  *Id*. at 8.  Plaintiff claims that he was again evacuated to the hospital and told to mail his documents for his third board, but they were purportedly never received, and this "was the primary reason for the Plaintiff's denial for his 2025 parole board."  *Id*.    Plaintiff also claims that MJRCF prevents inmates from filing motions to proceed ifp.  *Id*.  However, Plaintiff filed an ifp motion in this case (Doc. 2), two ifp motions in Case No. 25-3238 (Docs. 2, 5),  and an ifp motion in Case No. 25-3275 (Doc. 8).

"If equitable relief rather than damages is sought from a federal official, it must be obtained against him in his official capacity through a claim in the nature of injunction or mandamus."  *Arocho v. Nafziger*, 367 F. App'x 942, 948 n.5 (10th Cir. 2010) (unpublished) (citing *Simmat*, 413 F.3d at 1231).  Plaintiff is only entitled to assert official capacity claims for injunctive relief, and the proper defendant is the person in charge of the MJRCF.  Therefore, Plaintiff should show good cause why any individual capacity claims and his claims against Defendant Hansen, Deputy Commander, should not be dismissed.

---

[4]  MCFP Springfield is an administrative security federal medical center located in Springfield, Missouri.  *See* https://www.bop.gov/locations/institutions/spg/ (last visited May 21, 2026).

[5]  Plaintiff filed an action in the Western District of Missouri alleging in his amended complaint that he was treated by Research Medical Center off and on from January 2024 through May 2024.  *Askins v. Research Med. Ctr.*, Case No. 26-cv-00095-DGK-P, Doc. 20, at 1–2 (W.D. Mo. 2026).

The Court's jurisdiction is limited to claims against those with authority to provide such relief. In non-military facilities the warden is the proper defendant for injunctive relief because "the warden . . . is responsible for ensuring that any injunctive relief is carried out." *Crain v. Wilks*, 2025 WL 2049312, at *4 (N.D. Ind. 2025) (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)); *see also Clark v. Galipeau*, 2023 WL 4759312, at *1 (7th Cir. 2023) ("[T]he district court correctly designated Westville's warden in his official capacity as the proper defendant."); *see also Clark v. Raemisch*, 2016 WL 8710707, at n.2 (D. Colo. 2016) ("Official-capacity claims against Defendant Raemisch should remain, because the proper defendant for injunctive relief is any individual with the authority to effect relief.").

"[I]t is well established that prison administrators may be named as defendants for claims seeking injunctive relief even where they had no personal involvement in the alleged wrongs." *Rodrigues v. Special Treatment Unit*, 2024 WL 5264262, at n.4 (N. N.J. 2024) (citing *see Megginson v. Caldwell*, 2015 WL 13229496, at *5 (D.N.J. Dec. 4, 2015) (holding that prison Warden may be a proper defendant to a claim seeking an injunction based on denial of necessary medical care despite his lack of personal involvement in unconstitutional conduct) (citing *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) ("[A] corrections department secretary and prison warden were proper defendants in a § 1983 case because '[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.' "); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("Though Gonzalez does not allege any specific involvement by Gaetz in the treatment of his hernia, the warden . . . is a proper defendant since Gonzalez seeks injunctive relief

. . . . If Gonzalez was seeking only damages, the warden's lack of personal involvement would be conclusive, but since Gonzalez also seeks injunctive relief it is irrelevant whether the warden participated in the alleged violations.")); *Mitchell v. Jones*, 2022 WL 2657365, at *6 (W.D. Pa. Mar. 9, 2022) (collecting cases)); *see also Megginson v. Caldwell*, 2015 WL 13229496, at *5 (D. N.J. 2015) (finding warden proper defendant for claim that plaintiff was not receiving his medication).

The Court finds that the proper processing of Plaintiff's claims seeking injunctive relief cannot be achieved without additional information from appropriate MJRCF officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate MJRCF officials to prepare and file a *Martinez* Report. The Report should address Plaintiff's requests for injunctive relief and include any information pertaining to exhaustion and justiciability. *See Nauman v. Wormuth*, 2024 WL 776100, at *6 (D. Kan. 2024) (discussing two-part test to determine whether a military plaintiff's claim is justiciable). Once the report has been received, the Court can properly screen Plaintiffs' claims under 28 U.S.C. § 1915A.

## III. Motion for Preliminary Injunction/TRO (Doc. 4)

Plaintiff has filed a Motion for Preliminary Injunction and a Temporary Restraining Order, claiming that he has "historically been denied needed and life saving medications and medical services, this was claimed in CIV-25-1159-JD and admitted to by the Government." (Doc. 4, at 2.) Plaintiff claims that his previous religious accommodations were lost or destroyed when he was transferred between the MJRCF and MCFP Springfield. *Id*. Plaintiff also claims there is a history of denying him access to legal counsel as cited in CIV-25-1159-JD. *Id*. Plaintiff filed Case No. CIV-25-1159-JD in the Western District of Oklahoma on October 6, 2025. *See Askins*

*v. United States*, Case No. CIV-25-1159-JD (W.D. Okla).  The Defendants—the United States of America and the United States Army—have not filed an answer or otherwise responded to the complaint in that case.

Plaintiff seeks injunctive relief to prevent:  his transfer to another facility; the destruction of documents; placement in administrative 24-hour lockdown and isolation; the denial of access to the law library, mail, medications, medical devices, medical services, religious services; and any attempt to modify his religious accommodations that have already been provided to him. (Doc. 4, at 1.)

"The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"Except as to notice and duration, the legal standards governing a temporary restraining order ("TRO") and a preliminary injunction are the same."  *Vietti v. Welsh & McGough, PLLC*, 2022 WL 1288314, at \*2 (N.D. Okla. April 30, 2022) (citing *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.")).  "The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration."  *Id*. (citing Fed. R. Civ. P. 65(b)).

A party seeking preliminary injunctive relief must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the

threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396, 402 (10th Cir. 2018) (unpublished) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)).  Whether sought through a TRO or a preliminary injunction, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have its request granted.  *Vietti*, 2022 WL 1288314, at *2 (citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  A mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a TRO or preliminary injunction is warranted.  Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening

injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a TRO or preliminary injunction is warranted.   Plaintiff's motion is denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Preliminary Injunction and a Temporary Restraining Order (Doc. 4) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 26, 2026,** in which to show good cause, in writing to the undersigned, why his request for monetary damages, his requests for Defendants' reassignment or termination, any individual capacity claims, and his claims against Defendant Hansen, Deputy Commander, should not be denied or dismissed for the reasons set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that:

(1)    The MJRCF officials shall submit the *Martinez* Report by  **July 10, 2026**.  Upon the filing of that Report, the Court will screen Plaintiffs' SAC.  If the SAC survives screening, the Court will enter a separate order directing service.

(2)    Officials responsible for the operation of the MJRCF are directed to undertake a review of the subject matter of the SAC:

a.    To ascertain the facts and circumstances;

b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the SAC; and

13

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this SAC and should be considered together.

(3)      Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiffs.  If the MJRCF officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The MJRCF officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)      Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)      Authorization is granted to the MJRCF officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)      No motion addressed to the SAC shall be filed until the *Martinez* Report required herein has been prepared.

(7)      Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the SAC.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Commander Laura A. Proffit as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, Commander Proffit may move for termination from this action as interested party.

14

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the U.S. Attorney for the District of Kansas.

**IT IS SO ORDERED**.

**Dated May 26, 2026, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**